**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FOX VALLEY CONSTRUCTION GROUP INCORPORATED, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 2024 CV 02589 |
| v. | ) ) | Judge Sharon Johnson Coleman |
| | ) | |
| ATEGRITY SPECIALTY INSURANCE COMPANY, SECOR VILLAGE NORTH LLC, and DORR STREET PLAZA, LLC | ) ) ) | |
| | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Fox Valley Construction Group, Incorporated ("Fox Valley") brought this action for a declaratory judgment against Defendants Ategrity Specialty Insurance Company ("Ategrity"), Secor Village North, LLC ("Secor"), and Dorr Street Plaza, LLC ("Dorr"). Before the Court is Ategrity's motion to transfer this case to the United States District Court for the Northern District of Ohio [16]. For the following reasons, the Court denies Ategrity's motion to transfer.

**I.      Background**

Fox Valley, an Illinois corporation with its principal place of business in Illinois, filed this action requesting a declaratory judgment that Ategrity, a Delaware insurance company with its principal place of business in Scottsdale, Arizona, has a duty to defend Fox Valley in a consolidated action in Ohio state court by Secor and Dorr against Fox Valley for allegedly defective work (the "Underlying Lawsuit").[1]  *See Secor Village North, LLC, et. al. v. Fox Valley Contractors LLC, et. al.*, Case

---

[1] The Court notes that the Underlying Lawsuit referenced in Ategrity's motion has since been terminated by voluntary dismissal.  Secor and Dorr thereafter initiated a new action in Lucas County Common Pleas Court.  *See Door Street Plaza, LLC, et. al. v. Fox Valley Contractors LLC, et. al.*, G-4801-CI-0202402780-000 (Lucas Cty. Ct. C.P.).

No. G-4801-CI-0202301256-000 (Lucas Cty. Ct. C.P.). In that Underlying Lawsuit, Secor and Dorr, both incorporated and headquartered in Ohio, allege that they hired Fox Valley to install stone veneers on the exterior of two hotels in Toledo, Ohio and that Fox Valley's defective workmanship resulted in the stone veneers separating from the building surfaces. *See id.*, Compl. ¶¶ 9–10, 20, 22, 30.

Fox Valley filed the instant lawsuit on February 16, 2024 in the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois, which was removed to this Court on April 1, 2024. Ategrity then filed the instant motion to transfer venue to the Northern District of Ohio on May 9, 2024. (Dkt. 16.)

In this action, Fox Valley alleges that in January 2024 it requested that Ategrity defend Fox Valley in the Underlying Lawsuit under five commercial general liability insurance policies Ategrity had issued to Fox Valley, spanning from April 4, 2019 to April 4, 2024 (the "Policies"). (Dkt. 1-2 ¶¶ 8–12, 21.) Fox Valley further alleges that, in response to Fox Valley's request, Ategrity refused to defend Fox Valley in the Underlying Lawsuit under the Policies, citing, among other things, the absence of "bodily injury" or "property damage" as a result of an "occurrence," as required by the Policies. (*Id.* ¶ 22; *Id.*, Ex. I.) In this action, Fox Valley seeks a declaratory judgment stating, *inter alia*, that Ategrity has a duty to defend Fox Valley in the Underlying Lawsuit under the Policies, and that Ategrity, by its refusal to defend, breached that duty. (*Id.* at *6–7, ¶ 26.)

Separately, on March 13, 2024, Ategrity filed a complaint in the U.S. District Court for the Northern District of Ohio seeking a declaratory judgment that it has no obligation to defend or indemnify Fox Valley under the Policies in connection with the Underlying Lawsuit. *See Ategrity Specialty Ins. Co. v. Fox Valley Construction Grp., Inc., et. al.*, 24-cv-00470 (N.D. Oh. Mar 13, 2024). On June 24, 2024, Judge Zouhary of the Northern District of Ohio granted Fox Valley's motion to stay that case pending the outcome of the transfer motion in the first-filed case—*i.e.*, the case pending in this Court.

2

## II.    Legal Standard

A district court may transfer a case under § 1404(a) if the movant establishes that (1) venue is proper in the transferor court; (2) venue and jurisdiction are proper in the transferee court; and (3) transfer is for the "convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a); *see Karp v. Silver Arch Capital Partners, LLC*, 2021 WL 492872, at *1 (N.D. Ill. Feb. 10, 2021) (Coleman, J.). The Court looks to both private and public interests to determine whether transfer will serve the convenience of the parties and witnesses, as well as promote the interest of justice. *Nalco Co. v. Env't. Mgmt. Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010) (Hibbler, J.). The private interests are: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience to the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *Id.*; *see also Law Bulletin Publ'g Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998) (Alesia, J.). The public factors include: (1) docket congestion and anticipated speed to trial in the transferor and transferee forums; (2) each court's familiarity with the applicable law; (3) the desirability of resolving controversies locally; and (4) the relationship of each community to the controversy. *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020).

Section 1404(a) does not prescribe the weight to be given to each factor. Rather, "the weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The moving party has the burden "to demonstrate that the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another." *Econ. Preferred Ins. Co. & Farmers Prop. & Cas. Ins. Co. v. Lamb*, 2022 WL 1556115, at *8 (N.D. Ill. May 17, 2022) (Kocoras, J.) ("*Econ. Preferred*") (quoting *Graham v. UPS*, 519 F. Supp. 2d 801, 809 (N.D. Ill. 2007) (Bucklo, J.)). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Extended Care Clinical, LLC v.*

*Scottsdale Ins. Co.*, 2021 WL 825611, at *4 (N.D. Ill. Mar. 4, 2021) (Kendall, J.) (quoting *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003)).

## III.    Discussion

The Court first turns to whether it should adhere to a "first-to-file" rule. Next, the Court determines whether it should give consideration in our transfer analysis to the Policies' service of suit clause. Then, the Court considers whether venue is proper in the transferor and transferee districts. Finally, the Court weighs the private and public interest factors to determine whether transfer is appropriate.

### A.    First-to-File Rule

The Seventh Circuit has held on numerous occasions that it does not rigidly adhere to the first-to-file rule, which gives preference to an action filed before a later-filed action involving substantially similar issues. *See, e.g., Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010); *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749–50 (7th Cir. 1987) (the "mere fact" that a plaintiff filed its action first "does not give it a 'right' to choose a forum"). Rather, the order in which two suits were filed is merely a factor in the overall transfer analysis. *See Research Automation, Inc.*, 626 F.3d at 980. As a result, the Court gives this factor no supplementary weight. *See id.* at 982.

Additionally, although the Seventh Circuit, when faced with actions "involv[ing] a declaratory judgment action and a mirror-image action seeking coercive relief," has typically given priority to the coercive action regardless of which case was filed first, application of such a principle is inapplicable here. *Id.* at 980. The case before this Court and the one pending in the Northern District of Ohio are both actions for declaratory judgment; neither seeks coercive relief, including money damages or injunctive relief. (*See* Dkt. 1-2 at *6–7, (a)–(i); *Ategrity Specialty Ins. Co. v. Fox Valley Construction Grp., Inc., et. al.*, 24-cv-00470, Dkt. 1 (N.D. Oh. Mar 13, 2024).)

B. **Service of Suit Clause**

The parties also dispute whether Ategrity relinquished its ability to select a forum under the Policies' "service of suit" clause. Fox Valley claims that Ategrity "agreed, in the very Policies Fox Valley purchased at issue, that it would honor Fox Valley's choice of forum." (Dkt. 23 at *5.) Ategrity argues that the Policies' service of suit clause in question is not applicable because the instant action is not one in which money damages are being sought or for failure to pay a claim. (Dkt. 25 at 3–4.)

The Court agrees with Ategrity that it did not agree to submit to the venue of Fox Valley's choice. As Ategrity points out, the case Fox Valley cites, *Pine Top Receivables of Illinois*, is inapposite, as that case addressed the propriety of a defendant's removal of an action to federal court in light of a service of suit clause in which the defendant had submitted to the jurisdiction of the plaintiff's chosen forum. *See Pine Top Receivables of Ill., LLC v. Transfercom, Ltd.*, 2015 WL 8780611, at *2–3 (N.D. Ill. Dec. 14, 2015) (St. Eve, J.). The action before the Court deals with no such circumstances. Thus, the Court declines to give any consideration to the service of suit clause in the transfer analysis.

C. **Venue in Transferor and Transferee Districts**

The Court now addresses whether venue is proper in the transferor and transferee districts. Before transferring a case under Section 1404(a), the Court must first find that: (1) venue is proper in the transferor district, and (2) venue is proper in the transferee district. *See Coffey*, 796 F.2d at 219; 28 U.S.C. § 1404(a) (absent consent by the parties, transfer can only be made to a district in which the action "might have been brought"). Under 28 U.S.C. § 1441, which governs venue in an action removed from state to federal court, venue of a removed action is proper in "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953).

The Court agrees with both parties that venue is proper in the Northern District of Illinois. The complaint here was initially filed in the Circuit Court for the Eighteenth Judicial Circuit, DuPage

5

County and removed to the Northern District of Illinois, the district embracing DuPage County. Venue of the transferor court is therefore proper under § 1441(a).

The Court likewise agrees that venue is proper in the Northern District of Ohio. "There is legal support for the proposition that, in a declaratory action[], venue may lie where the events occurred in the underlying lawsuit for which coverage is sought; and also that venue may lie where the events relating to the insurance policy at issue occurred." *Econ. Preferred*, 2022 WL 1556115, at *5 (quoting *Lumbermens Mut. Cas. Ins. Co. v. Peirce, Raimond, & Coulter, P.C.*, 2009 WL 1035022, at *1 (W.D. Pa. Apr. 17, 2009)). Because the events giving rise to the Underlying Lawsuit for which coverage is sought in the instant action occurred in the Northern District of Ohio, and diversity of citizenship is satisfied, venue of the transferee court is proper.

### D. Convenience

Next, the Court weighs the following private interests related to convenience: (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses. *Law Bulletin Publ'g Co.*, 992 F. Supp. at 1017.

#### 1. *Plaintiff's Choice of Forum & Situs of Material Events*

The Court gives Fox Valley's choice of forum and the situs of material events little weight. "A plaintiff's choice of forum is generally granted substantial weight, particularly when the plaintiff resides in the chosen forum and the events giving rise to the cause of action took place in the selected forum." *Evangelical Lutheran Church in Am. v. Atlantic Mut. Ins. Co.*, 973 F. Supp. 820, 822 (N.D. Ill. 1997) (Alesia, J.)) ("*Evangelical Lutheran*"); *see also Econ. Preferred*, 2022 WL 1556115, at *6. A plaintiff entity is deemed to reside where it maintains its principal place of business. 28 U.S.C. § 1391(c)(2)).

"In the case of a declaratory judgment action, however, [this] principle has less force[.]" *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). In particular, "where the conduct and events

giving rise to the cause of action did not take place in the plaintiff's selected forum, the plaintiff's preference has minimal value." *Dunn v. Soo Line R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994) (Aspen, J.) (quotations omitted).

The parties dispute the location of the events giving rise to the cause of action. Ategrity argues that "with the exception of the delivery of the Polic[ies], none of the material events giving rise to this action occurred in Illinois." (Dkt. 16 at *5–6.) Ategrity maintains that "the only connection Illinois has to this dispute is that the Polic[ies were] delivered to Fox Valley in Illinois." (*Id.* at *6.) Fox Valley argues that Illinois has a strong connection to the case because Illinois is where the Policies were procured, delivered to, invoiced to, and paid for; where Fox Valley submitted its claim to Ategrity for insurance coverage; and where Ategrity delivered its letter denying coverage. (Dkt. 23 at *4–5.)

In declaratory judgment actions such as this one, this Court has sometimes deemed the relevant situs as the forum where the insurance policy has been solicited, negotiated, delivered, and executed, and other times where the decision was made to deny coverage. *Compare Econ. Preferred*, 2022 WL 1556115, at *6 (situs of material events was in Illinois where insurance policies were procured, not in Arizona where underlying injury occurred) *and St. Paul Fire and Marine Insurance Co. v. Brother International Corp.*, 2006 WL 1543275, at *2–3 (N.D. Ill. Jun. 1, 2006) (Gottschall, J.) (situs of material events in New Jersey, where the insurance contract at issue was formed and premium payments made) *with Evangelical Lutheran*, 973 F. Supp. at 823 (material events occurred at the location of the decision to deny coverage, not at the location of the conduct forming the basis of the underlying dispute) *and Extended Care Clinical, LLC*, 2021 WL 825611, at * 3 ("The instant lawsuit … has little to do with the merits of [the underlying] wrongful death action or the negotiation and purchase of the Policy. Rather, the present dispute concerns [the defendant's] decision to deny coverage of the [underlying] action … based on its interpretation of the Policy").

The Court holds that the event underlying this declaratory judgment action is Ategrity's decision to deny coverage. "The instant lawsuit has nothing to do with the merits of the underlying [] action … or the negotiation and purchase of the insurance policies." *Evangelical Lutheran*, 973 F. Supp. at 823. Instead, this case exists because Ategrity denied coverage based on its interpretation of the Policies. Although the record is unclear where that decision was made, neither party claims that it was made in Illinois or Ohio. And despite that Fox Valley is a resident of its chosen forum, as it is both incorporated and headquartered in Illinois, *see* 28 U.S.C. § 1391(c)(2), the Court concludes that Fox Valley's forum preference has minimal value because the events giving rise to the cause of action—*i.e.*, the decision to deny coverage—took place elsewhere. Thus, Fox Valley's choice to initiate the action here in this district is granted little weight.

### 2. *Availability of Evidence in Each Forum*

The next factor—the availability of evidence in each forum—proves neutral. This action for declaratory judgment is based primarily on the interpretation of the Policies. Ategrity notes, and Fox Valley does not dispute, that "the evidence would primarily consist of easily transferable documents," and that the need for access to the site of Fox Valley's work at issue is unlikely. (Dkt. 16 at *6.) The Court agrees and accordingly gives this factor no weight.

### 3. *Convenience of Witnesses*

The convenience of witnesses is likewise irrelevant, as this action is unlikely to go to trial. Ategrity claims that the use of non-party witnesses is unlikely, "other than possible expert witnesses who have not yet been identified or disclosed." (*Id.* at *6–7.) But "[v]ague generalizations concerning potential witnesses are insufficient." *St. Paul Fire & Marine Ins. Co.*, 2006 WL 1543275, at *4; *see also Beigel & Sandler v. Weinstein*, 1993 WL 189920, at *3 (N.D. Ill. May 28, 1993) (Plunkett, J.) ("The party asking for a transfer on the grounds of witness convenience … must clearly specify the key witnesses to be called and include a generalized statement about what their testimony will include."). Because

no witness or their general purpose for testifying have been identified, the Court has no reason to believe that the Northern District of Ohio is a more convenient forum for witnesses than this one. This factor proves neutral.

        4. *Convenience of the Parties*

The Court also assesses the convenience to the parties, under which the Court considers "the parties' residences and their ability to bear the expense of litigating in each forum." *Econ. Preferred*, 2022 WL 1556115, at *5.

As an initial matter, the Court notes that Plaintiff does not seek any relief from either Defendant. Indeed, Plaintiff's complaint clarifies that "[Secor] and [Dorr] are only joined in this lawsuit in an exercise of caution by virtue of being the plaintiffs in the underlying action out of which this lawsuit arises, with no relief being sought from them." (Dkt. 1-2 ¶ 5.) Moreover, Plaintiff's requested relief is a determination by this Court regarding Defendant Ategrity's duty and liability to Plaintiff; the complaint represents that, "[i]n the event that [Secor] and [Dorr] stipulate and agree to be bound by any judgment rendered in this case, Fox Valley will voluntarily dismiss them from this lawsuit." (*Id.* at *6–7.) In light of this posture, the Court gives minimal weight to its consideration of the convenience of Secor and Dorr—two parties from whom no relief is sought.

Second, Ategrity argues that because the parties are already litigating the Underlying Lawsuit in Ohio, retaining this case in this Court would lead to "piecemeal litigation pending in multiple venues across multiple jurisdictions, and convenience and efficiency would not be served by such a result." (Dkt. 16 at *7.) But the relief Ategrity seeks here—transfer of this case to the U.S. District Court for the Northern District of Ohio—would not eliminate the existence of "litigation pending in multiple venues across multiple jurisdictions." Whether or not this case is transferred does not change the fact that there will be two lawsuits—one tort action in state court and one declaratory judgement in federal court.

Giving minimal weight to convenience considerations of Secor and Dorr, the Court finds that because Fox Valley is an Illinois resident, and because Ategrity—a Delaware company headquartered in Arizona—has not shown that Ohio is a more inconvenient forum for it than Illinois, this factor weighs against transfer.

**E. The Interests of Justice**

The Court next considers whether the interest of justice, which relates to the efficient administration of the court system, compels transfer. *See Research Automation, Inc.*, 626 F.3d at 978. In evaluating the interests of justice, the Court looks at (1) docket congestion and likelihood to proceed to a speedy trial, (2) each court's relative familiarity with the relevant law, (3) the respective desirability of resolving controversies in each locale, and (4) the relationship of each community to the controversy. *Id.*

*1. Docket Congestion and Speed to Trial*

The first public interest factor, which considers docket congestion and speed to trial, does not compel transfer. For the 12-month period ending September 30, 2024, the median number of months from filing to disposition of civil cases in the Northern District of Ohio and the Northern District of Illinois was 6.8. and 7.4, respectively. *See* Federal Judicial Caseload Statistics 2024 Tables, Table C-5 (Sept. 30, 2024), available at https://www.uscourts.gov/sites/default/files/2024-12/jb_c5_0930.2024.pdf. The difference in disposition timelines is negligible, this action is unlikely to reach trial, and this Court is well-equipped to oversee this case.

*2. Familiarity with Applicable Law*

The second public interest factor, familiarity with applicable law, weighs against transfer. The parties agree that when an insurance policy does not include a choice of law provision, Illinois courts apply a "most significant contacts" test to determine which state's law should govern. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). Under this test, "insurance policy

provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Ironshore Speciality Ins. Co. v. Akorn, Inc.*, 543 F. Supp. 3d 605, 612 (N.D. Ill. 2021) (Kennelly, J.) (quoting *Jupiter Aluminum Corp.*, 225 F.3d at 873). Although generally given "special emphasis," "the location of the subject matter of the contract, such as the location of the risk insured by an insurance policy, is entitled to little weight when the subject matter or risk is located in more than one state." *Id.* (quoting *Jupiter Aluminum Corp.*, 225 F.3d at 873–74).

Here, there is no dispute that the Policies covered risks located in more than one state. (*See, e.g.*, Dkt. 1-2 at *42 (insurance coverage applies to "[a]ll locations/projects of the Insured")). Because Ategrity provided Fox Valley insurance coverage on a nationwide basis under the Policies, the Court gives little to no significance to the fact that the Underlying Lawsuit is pending in Ohio. The remaining elements under the "most significant contacts" test favor the application of Illinois law: the Policies were delivered to Fox Valley in Illinois; Fox Valley, the insured, is domiciled in Illinois; and the place of the last act to give rise to a valid contract (*i.e.*, where the Policies were delivered and premiums paid) is Illinois. *See Ironshore*, 543 F. Supp. at 612 ("The place of the last act giving rise to the policies is the state where the policies were delivered and where the premiums were paid."). The fact that the alleged injury itself occurred in Ohio does not compel the parties to try the case there, as the insured risk "could occur in any state where [Fox Valley] conducted its business." *Nat'l Sur. Corp. v. Bedivere Ins. Co.*, 2019 WL 2743485, at *6 (N.D. Ill. Jul. 1, 2019) (Ellis, J.) (quoting *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 964 (Ill. App. Ct. 2001)). Because Illinois substantive law governs the instant dispute, the factor of familiarity with applicable law weighs against transfer.

3. *The Respective Desirability of Resolving Controversies in Each Locale and the Relationship of Each Community to the Controversy*

The Court must also consider each forum's interest in the action and the relationship of each community to the controversy. Ategrity argues that the Northern District of Ohio has a greater interest in deciding this matter "due to the overwhelming contacts Ohio has with the underlying dispute." (Dkt. 16 at *10.) Fox Valley counters that Illinois has a stronger interest in determining whether an Illinois corporation, *i.e.*, Fox Valley, is protected by insurance policies purchased by and delivered to it in Illinois, and that the underlying action is irrelevant in assessing the respective forum's relationship to the controversy because it was merely the impetus of this case's dispute over insurance coverage. (Dkt. 23 at *13–14.)

The Court acknowledges that Ohio, as the situs of the events giving rise to the Underlying Lawsuit, has an interest in the resolution of this dispute, while also recognizing that Illinois has an interest in the resolution of a dispute involving an Illinois company that purchased commercial general liability insurance policies. To the extent these factors favor transfer, the local community interest in this dispute is not so great as to compel transfer.

## IV.    Conclusion

In sum, Ategrity has failed to satisfy its burden of demonstrating that transfer is warranted. Accordingly, the Court denies Ategrity's motion [16].

**IT IS SO ORDERED.**

_____
Sharon Johnson Coleman
United States District Judge

DATED: 3/14/2025